UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
                                :
RAND-WHITNEY CONTAINERBOARD     :
LIMITED PARTNERSHIP,            :
              PLAINTIFF         :
                                :
V.                              :  CIV. NO. 3:96CV413 (HBF)
                                :
TOWN OF MONTVILLE and TOWN OF   :
MONTVILLE WATER POLLUTION       :
CONTROL AUTHORITY               :
              DEFENDANTS        :
```

RULING ON PLAINTIFF'S MOTION ON ENTITLEMENT TO RECOVER FEES
AND COSTS

INTRODUCTION

Plaintiff, Rand-Whitney Containerboard Limited Partnership, seeks recovery of all expenses, including attorneys' fees, incurred in connection with defendants' breaches of the Water Supply Agreement ("Supply Agreement"). Defendants challenge plaintiff's entitlement to attorneys' fees under Section 11.1 of the Supply Agreement.  For the reasons that follow, plaintiff's motion on entitlement to attorneys' fees [doc. # 451] is GRANTED.

BACKGROUND

The Court assumes familarity with the background facts of this case, and will discuss only those facts essential to to the disposition of this motion.

This case was filed in 1996.  Plaintiff alleged, *inter alia,* that defendants breached certain sections of the Water Supply Agreement.  Plaintiff's complaint included a count for indemnification under section 11.1 of the Supply Agreement.[1]  On summary judgment, the Court determined as a matter of law that defendants breached the Water Supply Agreement, but that defendants had several defenses to liability that would require a trial. See Ruling on Cross Motions For Summary Judgment, And On Plaintiff's Motion For

---

[1] Section 11.1 provides, in relevant part, that:

each party shall indemnify .. the other party ... against all damages, losses or expenses suffered or paid as a result of any and all claims, demands, suits penalties, causes of action, proceedings, judgments, administrative and judicial orders and liabilities (including reasonable counsel fees incurred in any litigation or otherwise) assessed, incurred or sustained by or against such other party ... with respect to or arising out of ... any breach by the indemnifying party of its warranties, representations, covenants or agreements ..., including ... the failure to deliver Treated Water which complies with the volume and quantity standards set forth [in the Supply Agreement]...

Order Discharging It From Settlement Bond Obligations (March 4, 2002).  A jury trial was held from July 15 through August 9, 2002.  Prior to that trial, plaintiff claimed section 11.1 was clearly intended to apply to a lawsuit between the parties, and defendants argued the provision clearly was not intended to apply to a suit between the parties.  The court determined that the meaning of section 11.1 was ambiguous, and that the intent of the parties in drafting the provision was a question of fact to be resolved by the jury.  The first jury found in favor of defendants on the fraud counterclaim, and thus never reached the indemnification issue.

Distinct from the issue of the breach of the Supply Agreement, the first jury found that Montville breached the Service Fee provision of the Modification Agreement by overcharging Rand-Whitney, and awarded Rand-Whitney a verdict of approximately $ 300,000 on that claim.

On September 30, 2003, the Court set aside the jury's verdict on the fraud counterclaim, ruling that there was insufficient evidence to support its finding. See Ruling on Plaintiff's Motion For Judgment, Or, In The Alternative, For A New Trial (September 30, 2003).   As defendants had no remaining defenses as to liability, a second trial on

plaintiff's damages and defendants' defenses to damages was held in May, 2005.  The second jury delivered a verdict in favor of plaintiff in the amount of $ 10 million dollars. As part of their deliberations, the Court asked the second jury, by interrogatory, to determine whether section 11.1 of the Water Supply Agreement applied to "claims between Rand-Whitney and Montville." [Jury Interrogatory 5.][2]  The jury's

---

[2] The Court instructed the jury:

"You must determine what the parties intended by this provision, and specifically whether, at the time of the contract, the parties intended it to apply to claims between Rand-Whitney and Montville. Intent is determined from the language used in the agreement, interpreted in light of the surrounding circumstances, and in light of the motives of the parties and the purposes which they sought to accomplish. ..."

The court also instructed the jury on giving a "a fair and reasonable construction of the written words;" construing section 11.1 in light of the other contract provisions; the parole evidence rule; "reading each provision in light of the other provisions, and giving effect to every provision if it is possible to do so, so that the contract as a whole makes sense;" integration clauses; the circumstances surrounding the drafting of the term ("when choosing among reasonable meanings of an ambiguous agreement or term, where both parties have not had input into the drafting, you may choose the meaning that operates against the party that supplied the words you are considering.  This may not apply when the contract terms have been negotiated. It is up to you to decide what significance, if any, to attach to any evidence you heard about how this provision came into being."). Finally, the court instructed the jury that, "[d]epending on your finding, the court will determine what amount is due Rand-Whitney under section 11.1."  Jury Charge.

response to this question was understood by the parties to be determinative on the question of whether attorneys' fees and costs could be recovered by a party to this litigation.

The jury found that section 11.1 did apply to claims between Rand-Whitney and Montville.

Additionally, on March 31, 2005, the Court issued a declaratory judgment that Montville breached section 8.3 of the Supply Agreement.[3]

The Court must now determine Rand-Whitney's entitlement to fees and costs under section 11.1 of the Supply Agreement.


STANDARD OF LAW

In federal practice, the general rule -- known as the "American Rule" -- is that each party bears its own attorneys' fees. McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1312 (2d Cir. 1993); Hensley v. Eckerhart, 461 U.S. 424, 429 (U.S., 1983); Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975). However, parties may agree by contract to permit recovery of attorneys' fees, and a federal court will enforce contractual rights to

---

[3]Defendants' Motion for Reconsideration of this ruling is under advisement.

attorneys' fees if the contract is valid under applicable state law. <u>McGuire v. Russell Miller, Inc.</u>, 1 F.3d 1306, 1313 (2d Cir. 1993); <u>Alland v. Consumers Credit Corp.</u>, 476 F.2d 951, 956 (2d Cir. 1973).   In the Second Circuit, "when a contract provides for an award of attorneys' fees, the jury is to decide at trial whether a party may recover such fees; if the jury decides that a party may recover attorneys' fees, then the judge is to determine a reasonable amount of fees." <u>McGuire v. Russell Miller, Inc.</u>, 1 F.3d 1306, 1313 (2d Cir. 1993).

<u>DISCUSSION</u>

        Plaintiff contends that the sole ambiguity in section 11.1 that was indentified by any party was whether the clause applied to claims between Rand-Whitney and Montville. Because the jury answered this question in the affirmative, plaintiff contends that has been conclusively established that the clause applies to this lawsuit. Plaintiff asserts that it is entitled to recover fees and costs here because the plain language of section 11.1 states that Rand-Whitney is entitled to recover its fees and costs "with respect to" Montville's breaches of "its warranties, representations, covenants, or agreements."   Plaintiff avers that this covers

Montville's breaches of the Supply Agreement (including as amended by the Modification Agreement); the breach of section 8.3 of the Supply Agreement; and the breach of the Modification Agreement (Service Fee provision).  Plaintiff argues that, in McGuire v. Tilden, the Second Circuit noted that where, as here, "a contract authorizes an award of attorneys' fees, such an award becomes the rule..." Id. at 1313.

Defendants argue that Rand-Whitney is not entitled to attorneys' fees and costs pursuant to section 11.1 because the language of the provision does not clearly state that the Rand-Whitney is entitled to attorneys' fees in prosecuting a claim against Montville.  Defendants urge the Court to follow the standard articulated in United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co. that

> it is well settled in New York law that, inasmuch as a promise by one party to a contract to indemnify the other for [attorneys'] fees incurred in litigation between them is contrary to the well-understood rule that parties are responsible for their own [attorneys'] fees, the court should not infer a party's intention to waive the benefit of the [American Rule] unless the intention to do so is **unmistakably clear** from the language of the promise.

United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co.,
369 F.3d 34, 75 (2d Cir., 2004)(quoting Hooper Assocs., Ltd.
v. AGS Computers, Inc., 74 N.Y.2d 487, 492, 548 N.E.2d 903,
549 N.Y.S.2d 365 (1989) (emphasis added); see also Oscar
Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 199 (2d Cir.
2003).

     Defendants argue that the indemnification provision
contains definitive contract language that is unambiguous,
and its interpretation is therefore a question of law for
the Court.  Defendants argue that it is clear that the
provision does not meet the "unmistakably clear standard."
Defendants argue that the Second Circuit, as well as courts
from other circuits, have refused to interpret
indemnification provisions such as the one at issue here to
apply to litigation between parties to a contract. See Oscar
Gruss & Son, Inc. v. Hollander, 337 F.3d 186, 189 (2d Cir.
2003); US Fid.; Hooper Assoc., Ltd. v. AGS Computers, Inc.,
74 N.Y.2d 487, 549 N.Y.S.2d 365, 548 N.E.2d 903.  Defendants
acknowledge that the Connecticut Supreme Court has not
explicitly adopted this standard, but argue that it is
likely the Court would do so.

     Plaintiff argues that the "unmistakably clear" standard
is an application of New York law, and is not the law in

8

Connecticut.  They argue that McGuire v. Russell Miller,

Inc., 1 F.3d 1306 (2d Cir. 1993) controls. In McGuire, the

dispute was over a merger agreement containing the following

provision:

> 8.1 Indemnification by McGuire and the
> McGuire Shareholder. The McGuire
> Shareholder hereby agrees to indemnify,
> defend, and hold Tilden harmless after
> the Closing Date from and against any
> all [sic] of the following:
>
> A. The breach by McGuire of any warranty
> or representation made by McGuire
> pursuant to or in connection with this
> Agreement; . . .
>
> E. All costs, assessments, judgments and
> demands (including costs of defense,
> settlement, compromise, and reasonable
> attorney's fees) arising out of any
> claim, or the defense, settlement or
> compromise thereof, made with respect to
> paragraphs 8.1A through 8.1D.

McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1308 (2d Cir.

1993).

Plaintiff filed suit, and defendants asserted a

counterclaim and included a count for attorneys' fees and

costs under the indemnification provision.  The plaintiff

claimed that the provision did not apply to fees in a suit

between the parties.  Id. at 1315.  The district court

submitted the entitlement issue to the jury.  Question 22 of

the special verdict form asked the jury:

> Did McGuire agree, in the Merger
> Agreement or in the surrounding facts
> and circumstances, to indemnify Tilden
> for: the breach of any warranty in
> connection with the merger agreement;
> any claim brought against Tilden
> relating to the Premium Trust Account;
> or all costs, including attorneys' fees,
> arising out of any claim arising out of
> the transaction?

Id. at 1309.

The court concluded that "[t]he jury's affirmative answer to question 22 meant that, based on the indemnification provision, defendants should recover their attorneys' fees." Id.  The verdict form, however, did not include a question about the amount of such fees, so the district court did not award any. Id.  On appeal, the Second Circuit affirmed the jury's verdict on entitlement to fees, and concluded that the jury's affirmative answer to the interrogatory meant that, "based on the indemnification provision, defendants should recover their attorneys' fees." Id. at 1309.   The court remanded thae case to the trial court to calculate reasonable attorneys' fees. Id.

In discussing the procedure for determining contractual indemnity claims, the court noted that,

> this Circuit has never decided what
> procedure a district judge should follow
> in deciding a contractual claim for
> attorneys' fees. Counsel for both sides

10

> agreed at oral argument that the common
> practice in the district courts of this
> Circuit is for the judge to determine
> the amount of attorneys' fees owed
> pursuant to an indemnification agreement
> after the liability for such fees is
> decided at a trial, whether bench or
> jury (internal citations omitted).
> Following common practice, today we make
> law out of what was previously common
> sense: when a contract provides for an
> award of attorneys' fees, the jury is to
> decide at trial whether a party may
> recover such fees; if the jury decides
> that a party may recover attorneys'
> fees, then the judge is to determine a
> reasonable amount of fees.

McGuire v. Russell Miller, Inc., 1 F.3d 1306, 1313 (2d Cir.,
1993).

Plaintiff argues that the indemnity clause and jury
interrogatory at issue in McGuire v. Russell Miller
are virtually identical to those at issue in this case.
Plaintiff contends that both indemnity provisions require
that the breaching party indemnify the non-breaching party
against any and all liabilities, including counsel fees,
incurred as a result of the breach of the respective
agreements. Plaintiff argues that section 11.1 is even more
clear and unequivocal than the indemnity in McGuire because
it explicitly identifies as recoverable counsel fees
incurred as a result of the type of breach here: "the

11

failure to deliver Treated Water which complies with the volume and quantity standards" in the Supply Agreement. Pl.'s Repl. Mem. at 4.

Defendants argue that McGuire is distinguishable because it involved a dispute about the amount of fees, and not about whether plaintiff was entitled to fees under the agreement.  Defendant contends that the parties agreed that attorney's fees were appropriate under the agreement. Plaintiff responds that this is not accurate, as belied by the trial court's decision on remand, in which the court stated that it could not "entertain McGuire's contention that [defendant's] attorneys are not entitled to reimbursement of attorneys' fees pursuant to the indemnification agreement."  McGuire v. Wilson, 1994 U.S. Dist. LEXIS 2000 at *6 (S.D.N.Y. 1994).

McGuire v. Russell Miller, Inc., 1 F.3d 1306 (2d Cir. 1993) establishes that, in the Second Circuit, where contract language is ambiguous, the jury should determine whether a contractual indemnity applies to a suit between the parties.  Although the amount of fees was the primary issue in McGuire v. Russell Miller, its holding on the procedural question about how to resolve a contract ambiguity applies to this case.  In McGuire v. Russell

12

Miller, if there had been no dispute about the applicability of the provision to a suit between the parties, it can be reasonably assumed that the court would not have submitted the question to the jury in the first place.  In any event, the court's decision on remand clarifies that the parties were not in agreement about the application of the provision.

Defendants attempt to distinguish McGuire on the grounds that in McGuire, the jury was asked whether the provision and the *surrounding circumstances* meant that the indemnification provision applied to a suit between the parties.  Defendants aver that at trial they were not permitted to put on evidence of the circumstances that surrounded the signing of the contract, and therefore that McGuire is inapposite.  Specifically, defendants contend that, because the Court sustained several objections raised by plaintiff to certain questions asked of witness Michael Hillsberg, defendants were prohibited from putting on evidence regarding the surrounding circumstances. Review of the trial transcript indicates that the Court sustained several objections to questions posed by defendants' counsel in improper form.  Defendants' counsel did, however, have ample opportunity to present evidence of the surrounding

13

circumstances through the cross examination of James Cobery
and through Hillsberg, to the extent that his testimony was
relevant.

Defendants' citations to cases applying an
"unmistakably clear" standard also do not undermine
McGuire's applicability to the facts of this case.  Here,
the jury has already determined that the provision applied
to a suit between the parties, and no case cited by
defendants involved such a prior jury verdict.  These cases
also did not address the McGuire holding that the jury's
finding conclusively determined that the indemnity applied
and that fees were recoverable.

Furthermore, the cases cited by defendants to support
their argument apply a standard created and applied under
New York law, and defendants can cite to no case in
Connecticut applying the "unmistakably clear" standard.  In
essence, the Town asks the Court to use a different standard
in ascertaining the intent of the indemnification provision
than it uses to ascertain the intent of any other provision
of the contract.  The Town has not persuaded the Court that
the Connecticut Supreme Court has endorsed such an approach.

Defendants cite City of Norwich v. Silverberg, 200
Conn. 367 (1986) to support their averment that the

14

Connecticut Supreme Court would apply an "unmistakably
clear" standard.  In that case, the City of Norwich brought
suit against Richard Ziff, corporation counsel to plaintiff,
and Guerson Silverberg, assistant corporation counsel, for
legal malpractice.  At issue on appeal was the scope of
General Statutes § 7-101a:

> [General Statutes] Sec. 7-101a requires
> a municipality to "protect and save
> harmless any municipal officer, whether
> elected or appointed, of any board,
> committee, council, agency or
> commission, or any full-time municipal
> employee, of such municipality from
> financial loss and expense, including
> legal fees and costs, if any, arising
> out of any claim, demand, suit or
> judgment by reason of alleged
> negligence, or for alleged infringement
> of any person's civil rights, on the
> part of such officer or such employee
> while acting in the discharge of his
> duties.

Norwich v. Silverberg, 200 Conn. 367, 369 (Conn.
1986)(citing Gen Stat. Sec. 7-101a).

    The court construed that statute, and determined that
the legislature intended the provision to apply to
transactions in which "an injured third person was seeking
relief from a municipal employee and, indirectly, from a
municipality itself."  Norwich v. Silverberg, 200 Conn. 367,
371-372 (Conn. 1986).  Thus, the court found that the

provision would not apply to case in which a municipality sued its own employees.

The court found that this construction comported with the apparent purpose behind the enactment of the statute to provide recourse for claiments injured by the misconduct of municipal officers and employees acting in the course of their official duties, by extending liability to the municipality under the respondeat superior doctrine. Id. at 374-375. The court determined that this purpose did not require extension to suits brought by municipalities against their officers. Id. The court reasoned that:

> It is true that the legislature might have determined that the need to attract citizens to public service required it to go beyond respondeat superior and to provide for municipal officers and employees total immunity from liability for actions in negligence brought by their municipal employers. In our view, however, if that had been the legislature's intention, it would have been manifested by a straight-forward immunity statute rather than by the round-about system of indemnification that the defendants ask us to read into § 7-101a. We will not infer such an intention without a clearer indication of purpose than § 7-101a, read as a whole, presently expresses.

Norwich v. Silverberg, 200 Conn. 367, 375 (Conn. 1986).

16

Defendants argue that the court's admonition that, "we will not infer such an intention without a clearer indication of purpose than § 7-101a, read as a whole, presently expresses" creates the equivalent of New York's "unmistakably clear" standard in Connecticut. The court is not persuaded. In context, it is clear that the Connecticut Supreme Court was simply applying the traditional principles of statutory construction to discern the legislature's intent in enacting the statute. The language emphasized by the defendants in Norwich applied to the court's determination of whether the legislature would have intended municipal employees to be completely immune from liability for actions in negligence brought by their municipal employers. The court would not read the provision to afford such immunity without clearer indication of such an intent. In doing so, however, the court did not promulgate a new standard for the interpretion of contractual indemnity provisions. In addition, the City of Norwich is inapposite because it did not involve a conclusive jury verdict on the question of whether a contractual indemnity applied to a suit between the parties to the contract.

The defendants also argue that Amoco Oil Co. v. Liberty Auto & Elec. Co., 262 Conn. 142 (Conn. 2002), supports their

17

argument that the Connecticut Supreme Court would apply an
unmistakably clear standard.  In determining whether a
provision applied to a claim between parties to a contract,
the Court noted that "the concept of indemnity *usually*
involves an indemnitor, A, and an indemnitee, B, who enter
into a contract whereby A agrees to indemnify B for any
money B becomes legally obligated to pay to a third party."
Amoco Oil Co. v. Liberty Auto & Elec. Co., 262 Conn. 142,
149 (Conn. 2002)(emphasis added).  While acknowledging that
indemnification agreements typically involve third-party
claims, the case does not state that indemnification
agreements must always involve third-party claims.  The case
also does not suggest that a court should apply a heightened
standard in determining whether to submit an ambiguous
indemnification provision to a jury.

In their brief, defendants argue at length about how
they believe the court should interpret section 11.1 in
light of the other provisions of the contract (sections
11.2-11.3).  These arguments are untimely given that the
Court properly submitted the issue to the jury with
comprehensive and correct instructions, and the jury
interpreted the clause to apply to a lawsuit between the
parties.  Defendants did object to the Court's instruction

18

on indemnification, and argued that the jury should have been instructed that the contract was not ambiguous as to the indemnification issue.  However, at that time, they did not raise any of the arguments concerning their claim that a contract provision must be "unmistakably clear" in order to apply to a suit between the parties.  These arguments are therefore also barred as untimely.[4]

In summary, the Court concludes that there is no basis under either Connecticut law or Second Circuit law for the Court to set aside the jury's interpretation of the indemnification clause.  The court followed Second Circuit law in submitting the question to the jury.  Here, as in McGuire, the indemnification provision was ambiguous, and was submitted to the jury.  As in McGuire, the jury in this case found that the clause applied to a suit between the parties.  None of the case cited by defendants involved a jury's findings, nor did a judge in any of those cases

---

[4] Plaintiff also argues that defendants' argument amounts to a pseudo-Rule 59 motion, arguing that the Court improperly submitted the entitlement issue to the jury, and alternatively, that the jury's finding was erroneous as a matter of law.  Plaintiff argues that Defendants did not preserve any objection to submitting the entitlement issue to the jury such that they could even file a proper Rule 59 motion. The Court will address this when, and if, defendants seek to file Rule 59 motion on this issue.

proceed to set aside a jury's finding.  Accordingly, the
Court will not now disturb this jury's verdict that Section
11.1 applies to a lawsuit between the parties.


Equity

Defendants' next argument is that equity should
preclude an indemnity award because of the 2002 jury's
finding that Rand-Whitney breached the covenant of good
faith and fair dealing.  Defendants cite no authority for
this proposition.  The Court agrees with Plaintiff that the
breach of the covenant issue is irrelevant to the
indemnification claims, and, in any event, that the
defendants reaffirmed the indemnity provision as a part of
the 1996 Modification Agreement, long after the covenant
claim arose.  See Ruling on Plaintiff's Motion for Summary
Judgment On All Defendants' Remaining Damages (March 26,
2005).


Reciprocal claim for indemnification

Defendants also argue that they should be entitled to
reciprocal rights to attorneys' fees and costs for
plaintiff's breach of the covenant of good faith and fair
dealing.  Plaintiff asserts that defendants are barred from

20

asserting this claim because, unlike Rand-Whitney, they never pled a count for indemnity in their pleadings, and cannot do so now.  Defendants did not specifically plead indemnification in counterclaim, and the Court has no basis to award such fees in the absence of such a claim.

Given the jury's verdict that section 11.1 applies to a lawsuit between the parties, the Court finds that plaintiff has established its right to attorneys' fees and costs incurred as a result of Montville's breach of the Supply Agreement, as modified by the Modification Agreement, and the breach of the service fees provision of the Modification Agreement.  Plaintiff is also entitled to attorney's fees and costs for the breach of section 8.3(e) of the Supply Agreement, provided the Court does not reverse its decision on section 8.3 upon reconsideration.  The amount of attorneys' fees and costs to be awarded will be determined according to the parties' filings on this issue.[5]

---

[5]The parties dispute whether <u>Burr v. Lichtenheim</u>, 190 Conn. 351 (Conn. 1983) authorizes Rand-Whitney to recover fees incurred in establishing its right to indemnification under the contract, as distinct from its right to recover

CONCLUSION

    For the reasons stated herein, plaintiff's motion on entitlement to attorneys' fees **[doc. # 451]** is **GRANTED.**


    SO ORDERED at Bridgeport this 29th day of September, 2005.


                  ____/s/_____
                  HOLLY B. FITZSIMMONS
                  UNITED STATES MAGISTRATE JUDGE

---

fees incurred in establishing the breach of contract.  The parties should address this issue in their filings on the amount of recoverable fees and costs.