```
                    UNITED STATES DISTRICT COURT
                      DISTRICT OF CONNECTICUT


RAND-WHITNEY CONTAINERBOARD    :
LIMITED PARTNERSHIP,           :
          PLAINTIFF            :
                               :
V.                             :  CIV. NO. 3:96CV413 (HBF)
                               :
TOWN OF MONTVILLE and TOWN OF  :
MONTVILLE WATER POLLUTION      :
CONTROL AUTHORITY              :
          DEFENDANTS           :
```

**RULING ON DEFENDANTS' MOTION FOR STAY OF EXECUTION OF JUDGMENT AND FOR EXPEDITED RULING ON MOTION FOR APPROVAL OF SUPERSEDEAS BOND**

## I. Introduction

Pending are defendants' motion to approve a proposed supersedeas bond [Doc. #564], filed on July 30, 2007,[1] and defendants' emergency supplemental motion for stay of execution of judgment, [Doc. #572] and for expedited ruling on motion for approval of supersedeas bond, [Doc. #573], filed on September 6. After argument and for the reasons that follow, both the Motion to Approve a Supersedeas Bond **[Doc. #564]** and the Emergency Supplemental Motion for Stay of Execution of Judgment **[Doc. #572]**

---

[1] Rand Whitney Containerboard Limited Partnerships ("Rand Whitney") responded on August 6 [Doc. #567]; defendants filed a reply brief on August 27 [Doc #569]; plaintiffs moved for leave to file a sur-reply [Doc. #570]; and defendants objected to the motion for leave to file sur-reply [Doc. #571]. As the Court has considered all the filings and defendants referenced the sur-reply in oral argument, the Motion for leave **[Doc. #570]** is **GRANTED.**

are **DENIED**. Defendants' Motion for Expedited Ruling on motion for approval of supersedeas bond **[Doc. #573]** is **GRANTED**.

The motions pending before the Court are a result of a judgment for the plaintiff, Rand Whitney, in the amount of $13,585,839.38. Post-judgment interest is accruing, as 28 U.S.C. § 1961 provides, until the judgment is paid in full.

Plaintiff raises serious concerns about the complexity of the Town of Montville's revenue generating process and the amount of time that would be required to collect on any judgment affirmed on appeal. In addition, the plaintiff challenges the likelihood that the town will take appropriate steps to satisfy the judgment in a timely manner.

## II. Discussion

### A. Purpose of Supersedeas Bond

The purpose of a supersedeas bond is to preserve the status quo while protecting the non-appealing party's rights pending appeal. Beatrice Foods Co.v. New England Printing and Lithography Co., 930 F.2d 1572 (D. Conn. 1991).

"A supersedeas bond is a contract by which a surety obligates itself to pay a final judgment rendered against its principal under the conditions stated in the bond." Amwest Surety Ins. Co. V. Graham, 949 S.W.2d 724, 726 (Tex.Ct.App.1997). The surety of the bond remains liable unless one of the stated conditions of the bond has occurred properly discharging the surety. Werbungs Und Commerz Union Austalt v. Collectors Guild,

Ltd., 782 F.Supp 870 (S.D.N.Y. 1991). "Although the characteristics of particular judicial bonds may vary, their general purpose is clearly to ensure that parties involved in civil litigation will fulfill their respective obligations." L. Franklin Elmore & Mason A. Goldsmith, Jr., *Judicial Bonds, in the Law of Suretyship*, 203, 210 (Edward G.Gallagher, ed., 2nd ed.2000).

### B. Language of a Supersedeas Bond

It is important that the language contained in a supersedeas bond be clear and unambiguous. No federal statute, provision of the Federal Rules of Civil Procedure, or provision of the Federal Rules of Appellate Procedure defines the conditions that trigger a surety's obligation under a supersedeas bond. Werbungs Und Commerz Union Austaltv. Collectors Guild, Ltd., 782 F.Supp 870 (S.D.N.Y. 1991). *(citing* Tennessee Calley Auth. V. Atlas Mach. & Iron Works, Inc., 803 F.3d 794, 798 (4th Cir. 1986)); 11 Wright & Miller, *Federal Practice and Procedure* § 2905 (1972)). The Supreme Court, however, has made it clear that the obligation of sureties upon bonds is *strictissimi juris*, and not to be extended by implication or enlarged construction of the contract entered into. Crane v. Buckley, 203 U.S. 441, 447, 27 S.Ct. 56, 58, 51 L.Ed. 260 (1906).

It is clear that the terms of an appeal bond determine the extent to which the surety on the bond is bound. American Federal

3

Group, Ltd. V. Rothenberg, 1998 WL 273034 (S.D.N.Y. 1991). Although the interpretation of a bond follows traditional contract principles, the interpretation of a bond agreement is a unique task. While the parties' intent is controlling, much of the language in the bond is likely to be boilerplate, with portions dating back more than a century. Cases interpreting past bond agreements must be considered, for they almost certainly influence the language the bonding company chooses. Beatrice Foods Co.v. New England Printing and Lithography Co., 930 F.2d 1572 (D. Conn. 1991).

In order to determine what the terms of the supersedeas bond in this case should be, we must consider the line of cases decided under former statutes and rules governing the scope of liability under supersedeas bond. Although those statutes and rules are no longer in effect, they provide a framework within which the language of a bond may be usefully evaluated. Tennessee Valley Authority v. Atlas Mach. & Iron, 803 F.3d 794, 798 (4th Cir. 1986); 11 Wright & Miller, *Federal Practice & Procedures* § 2905 at 327 (1973). Prior to the enactment of the Federal Rules of Civil Procedure, an appellant's obligation under a supersedeas bond was governed by statute. Section 22 of the Judiciary Act of 1789, 1 Stat. 73, 85, provided that the party who gave the bond remained obligated under it unless he "prosecuted his writ to effect," and he was liable to pay on the bond "if he fail to make his plea good." *See* Kountze v. Omaha

4

Hotel Co., 107 U.S. 378, 381, 2 S.Ct. 911, 914, 27 L.Ed. 609 (1882). In 1878, this provision was revised and codified as § 1000 of the Revised Statues (2d ed.). The revised version provided that the supersedeas bond would secure the judgment unless "the plaintiff in error or the appellant shall prosecute his writ to effect, and, if he fail to make his plea good, shall answer all damages and costs..." Cases decided under these statues held that an appellant was not discharged from his obligation under a supersedeas bond unless he won a substantial reversal of the lower court's judgment. Crane v. Buckely, 203 U.S. 441, 446-47, (1906). From 1938 to 1968, supersedeas bonds were governed by former Rule 73(d) of the Federal Rules of Civil Procedure. Former Rule 73(d) provided that an appellant would be liable under a supersedeas bond for the satisfaction of the judgment in full together with costs, interests, and damages for delay, if for any reason the appeal were dismissed or the judgment were affirmed, and to satisfy in full such modification of the judgment and such costs, interest and damages as the appellate court adjudged and awarded. Federal Rule of Civil Procedure 73(d) was rescinded in 1968 when the Federal Rules of Appellate Procedure was adopted. The Appellate Rules, however, contain no provision concerning supersedeas bonds. *See* 11 Wright & Miller, *Federal Practice & Procedure* § 2905 at 327 (1973).

Defendants argue that the language in the bond they submitted is "Traveler's standard bond for federal appeals, is

consistent with federal law and conforms to industry standards" and, as such, it should be approved by the court. Def. Reply p. 2. However, because such language is standard does not mean that it is the appropriate or sufficient language for this case. Moreover, defendants have supplied the Court with two very different form bonds, one executed and one proposed, both of which are said to have originated with Travelers. The executed proposed bond, dated July 30, 2007, is significantly shorter, leaving out much of the language that is contained in the second proposed bond. If either form were standard, this discrepancy would not exist between the two.[2] Defendant further argues that because these are standard forms available on Westlaw, they are adequate. Def. Reply at 2. *See* 2 Ded. Proc. Forms, L.Ed. § 3:223-24. This argument fails to address the facts and concerns specific to this case.

A creditor may always challenge the adequacy of the bond before the district court judge. Phansalkar v. Andersen Weinroth & Co., L.P., AW & Co., Inc, 211 F.R.D. 197 (S.D.N.Y. 2002). Judgment creditors can raise objections to the conditions of the bond and request their modification. Sheldon v. Munford, Inc., 128 F.R.D. 663 (N.D.Ind. 1989).

Plaintiff is correct in asserting that a supersedeas bond is

---

[2] Most notably, between the first and second versions, the clause that required Montville "promptly perform and satisfy the judgment" changed to requiring that Montville "shall satisfy the judgment in full." Pl's Mot. for Sur-reply p. 2.

6

not a "one size fits all" proposition and the court's role is not to rubber-stamp whatever bond the judgment debtor presents. Pl's Mot. for Sur-reply p. 4. Prior to the approval of a supersedeas bond, there must be a showing that the bond is sufficient. The trial judge is the sole party to make the decision in judging the solvency of the sureties and the sufficiency of securities for the purpose of a supersedeas bond. Jerome v. McCarter, 88 U.S. 17 (Oct. Term 1874).

The philosophy underlying Federal Rule of Civil Procedure 62(d) is that a plaintiff who has won in the trial court should not be put to the expense of defending his judgment on appeal unless the defendant takes reasonable steps to assure that the judgment will be paid if it is affirmed.[3] See Lightfoot v. Walker, 797 F.2d 505 (7th Cir. 1986)(Requiring supersedeas bond because the procedure for collecting a judgment against the state is not only cumbersome and time-consuming, but uncertain in outcome, since the judgment cannot be paid unless and until the state legislature votes to appropriate the money necessary to pay it.)

Recent statements by counsel for defendants have created

---

[3]Fed. R. Civ. P. 62(d) provides,
> [w]hen an appeal is taken the appellant by giving a supersedeas bond may obtain a stay subject to the exceptions contained in subdivision (a) of this rule. The bond may be given at or after the time of filing the notice of appeal or of procuring the order allowing the appeal, as the case may be. The stay is effective when the supersedeas bond is approved by the court.

Rule 62(d).

additional uncertainty as to the likelihood and manner of payment of the judgment. Pl's Mot. for Sur-reply p. 4. <u>Southeast Booksellers Assoc. V. McMaster</u>, 233 F.R.D. 456 (D.S.C. 2006). Specifically, the grave financial picture previously painted by the town has been underscored by Mayor Jaskiewicz, who represented that the town depends on Rand Whitney's service fees and the debt service it pays on the bond for approximately 36 percent of the Water Pollution Control Authority's operating budget and that Rand Whitney's failure to pay those fees would quickly cripple the ability of the Water Pollution Control Authority to operate. Jaskiewicz Aff. 2.

Additionally, as this court noted in its January 23, 2007 ruling on defendant's Motion for stay of execution of judgment and relief from supersedeas bond, or in the alternative for stay and temporary relief from such bond, defendants have not taken any steps to prepare for the possibility they may have to satisfy the large judgment entered against them.[4] Rather than offer

---

[4]The Court previously noted that the defendants' ability to pay this Judgment is questionable. Defendants have known about the $344,000 jury verdict since August of 2002. Defendants have known about the $10 million jury verdict since May of 2005. Defendants also knew that plaintiff had been awarded over $3 million in attorneys' fees and costs in October of 2006. Defendants are aware that post-judgment interest, at current rates, is accruing at approximately $50,000 per month. Pl's. Mot. p. 10. Despite this knowledge, defendants have failed to allocate any funds to pay the Judgment or to post a supersedeas bond.
    Defendants have also had sufficient time to conduct a referendum for voter approval to issue municipal bonds. In fact, placing this question on the November 2006 election ballot would have obviated the need for a special referendum. Instead, defendants took no action. Defendants cannot provide adequate

8

evidence of the method Montville would employ or the length of time it would take raise funds to pay the judgment, the defendants only represent that as a municipality they are solvent and therefore cannot declare bankruptcy. This argument is not reassuring, in part because a municipality <u>can</u> declare bankruptcy with the Governor's approval. Conn. Gen. Stat. § 7-566 (1993); <u>In Re City of Bridgeport</u>, 128 B.R. 688 (Bankr. D. Conn. 1991). The fact that a municipality must take the extra step of approval by the Governor does not allay the legitimate concerns of the plaintiffs that the Town could make the collection process time consuming and expensive. Defendants' counsel heightened plaintiff's concerns during argument on the pending motions when he suggested that, upon approval of the bond, plaintiffs would be left to litigate against Travelers and deal with any defenses the surety might raise to the enforceability of the bond. Because the bond is a contract and it secures the obligations of the <u>defendants</u>, it is the responsibility of the <u>defendants</u> to post a bond that will genuinely secure payment of the judgment and evince their intent to do so.

Absent a stay of the judgment pending appeal which enters when a supersedeas bond is approved, the judgment is payable and may be collected upon. The supersedeas bond and attendant stay confer a benefit on appellants, to postpone plaintiff's right to

---

assurances that a referendum will result in approval and, in fact, based on the history and political sensitivity of this litigation, it is uncertain that the voters will approve this authority.

9

execute on the judgment by substituting a surety for appellants whose ability or willingness to pay a judgment post-appeal is questionable. When an approved bond is posted, plaintiffs are required to forbear from taking immediate steps to execute on a judgment in exchange for the assurance of the bond that a solvent surety is willing and able to pay the judgment when the appeal is concluded. This process is not a game of "gotch ya" in which defendants may seek to avoid their legal obligations by interposing an ambiguous agreement which the surety can then seek to avoid.

Defense counsel's cavalier dismissal at argument of legitimate questions about the meaning and effect of language contained in the two different bonds proposed by defendants, and the fact that he considered suggested terms like "promptly" and "within a reasonable time" so lacking in specificity as to be meaningless has persuaded the Court that any bond it approves must be drafted with precision and clarity, so that it accurately reflects the agreement and intent of its parties, the defendants and the surety, as to their respective rights and responsibilities regarding the judgment. If defendants do not know what the bond requires of them, they will not know how to perform. For example, from the two proposed bonds, the Court could not determine if the intent of its parties was that Montville be given an opportunity to satisfy the judgment first, or if Rand Whitney should seek recourse against the surety in the first instance. This is not a term that should be left for

10

interpretation and argued at a later date.

The executed bond, dated July 30, 2007, is **NOT APPROVED**. It incorrectly references the Court's judgment (by citing an incorrect date) and its language is inadequate to secure timely payment of the judgment.

The Court will not approve a bond submitted in the proposed form appended to the Defendants' Reply Memorandum. It lacks specificity. In light of the defendants' uncertainty about their obligations vis à vis the surety, the language of the bond must clearly bind the surety to pay the judgment, unless the defendants do so by a date certain. Accordingly, any proposed bond shall unequivocally bind the surety to pay any judgment affirmed or as modified by the Court of Appeals, up to $16 million, unless within 90 days of the Court of Appeals' decision, the defendants satisfy the judgment in full. This time period is based on the representations made in earlier filings by the defendants that it would take ninety days to obtain referendum approval to issue municipal bonds.[5] Def. Mot. Temp. Relief from Bond [Doc. #544] at 9.

## III. Conclusion

For the foregoing reasons, defendants' Motion to approve a

---

[5]The Court is not suggesting that the defendants must choose this method of satisfying any judgment affirmed by the Court of Appeals. It merely provides a definite time period, previously acknowledged as reasonable by defendants, within which defendants could realistically take action.

11

proposed supersedeas bond **[Doc. #564]** is **DENIED**.  Likewise, the defendants' Emergency Supplemental Motion for stay of execution of judgment **[Doc. #572]** is **DENIED**.  The Motion for expedited ruling on motion for approval of supersedeas bond **[Doc. #573]** is **GRANTED** in accordance with this ruling and order.  The record should note that the Court held a hearing within 24 hours of defendants' emergency filing.

SO ORDERED at Bridgeport this 11th day of September, 2007.

_____/s/_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE